# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| RANDOLPH YOUNG, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | No. 09-2834 |
| | : | |

## MEMORANDUM RE: SOCIAL SECURITY APPEAL

**Baylson, J.**                                                                                                         **May 26, 2010**

Plaintiff, Randall Young, seeks judicial review of the decision by the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Social Security Disability Insurance Benefits ("SSDI") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-83(c) (2000). Jurisdiction is established under § 1383(c)(3), which incorporates § 405(g) of the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). After careful and independent consideration of the matter, and for the following reasons, the Court will remand the case to the Commissioner for further proceedings consistent with this opinion.

**I.      Background and Procedural History**

On June 13, 2007, Plaintiff applied for SSDI and SSI benefits, alleging disability beginning February 2, 2004. (R. 122-130.) Plaintiff, a high school graduate (R. 28-29), was thirty-nine (39) years old on the date he alleges he became disabled (R. 122). Plaintiff has work experience as a mover and van driver (R. 29-30) and as a groundskeeper (R. 30). Plaintiff alleges

that he suffers from multiple severe impairments including degenerative disc disease of the lumbar spine with disc herniation at L5-S1 that impinges upon the right SI nerve root, chronic pain, degenerative changes within the posterior horn of the left knee accompanied by grade IV chondromalacia, and major depression. (R. 170-181, 185-186, 188-201, 223-250, 299-304, 306-424.)

The Social Security Administration denied Plaintiff's application on November 29, 2007. (R. 78-87.) On January 8, 2008, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (R. 90-91.) The hearing was held before ALJ Christine McCafferty on August 28, 2008. (R. 25-55.) In her written decision of September 11, 2008, ALJ McCafferty denied Plaintiff's application for benefits, and held that Plaintiff was not disabled within the meaning of the Act. (R. 9-24.) The ALJ found that Plaintiff suffered from severe impairments including a lumbar disc disease and a mood disorder, but that Plaintiff's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. (R. 14-16.) The ALJ then determined that Plaintiff: has the residual functional capacity ("RFC") to perform a narrowed range of light work; can perform no more than occasional postural activities, no pushing or pulling with the lower extremeties, no overhead reaching with the right upper extremety, and must have the option of sitting or standing to do work; and is limited to performing no more than simple and routine one to two step tasks with no more than occasional changes in the work setting. (R. 17-22.) Although the ALJ found that Plaintiff was unable to perform any past relevant work, the ALJ found that based on Plaintiff's age, education, work experience, and RFC, there were a significant number of jobs in the national economy that he could perform. (R. 22-23) Thus, the ALJ found that Plaintiff was not "disabled" under the Act.

(R. 23.)

Plaintiff timely filed a request for review of the ALJ's decision on October 2, 2008 (R. 7-8), and subsequently submitted a brief in support, via letter, of his request for review on December 11, 2008 (R. 4-6). On April 21, 2009, the Appeals Council denied Plaintiff's request for review, affirming the ALJ's decision. (R. 1-3.) Plaintiff subsequently filed the instant action, requesting that this Court reverse the Commissioner's decision, or, in the alternative, remand the case to the Commissioner for receipt of further evidence. (Doc. Nos. 3, 7.)

## II. Legal Standards

### A. Jurisdiction

The Social Security Act provides for judicial review by this Court of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g) (2000). A district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id.

### B. Standard of Review

On judicial review of the Commissioner's decision, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Id. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003)). In reviewing the record for substantial evidence, however, this Court must "not 'weigh the evidence or substitute [its own] conclusions for those of the fact finder.'" Rutherford, 399 F.3d at 552 (quoting Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992)). This Court's review of the legal standards applied by the ALJ is plenary. See Allen

v. Barnhart, 417 F.3d 396, 398 (3d Cir. 2005).

### C. Disability Claims Analysis

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner of the Social Security Administration has promulgated regulations requiring a five-step sequential analysis to determine the eligibility of claimants for benefits. First, if the claimant is engaged in substantial gainful activity, the claim must be denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claim must be denied unless the claimant is suffering from a severe impairment or combination of impairments that significantly limits physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant's severe impairment(s) meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claim is approved. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Fourth, if the claim is not approved under Step 3, the claim will be denied if the claimant retains the residual functional capacity ("RCF") to meet the physical and mental demands of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). Finally, if the claimant does not retain the RFC to perform past relevant work and there is no other work in the national economy that the claimant can perform, considering his or her RFC, age, education, and past relevant work experience, then the claim will be approved. 20 C.F.R. §§ 404.1520(g), 416.920(g).

### III. Parties' Contentions

Plaintiff raises several grounds for reversing the ALJ's decision. First, Plaintiff argues that the ALJ committed a reversible error of law by failing to include in her hypothetical questioning of the vocational expert ("VE") any limitations with regard to Plaintiff's social functioning. Second, Plaintiff argues that the ALJ committed a reversible error of law by failing to discuss or evaluate a consultative mental health examination performed by Carl Herman, M.D. Third, Plaintiff argues that the ALJ's RFC assessment represented little more than the ability to perform sedentary work, and thus undermined the VE's testimony that Plaintiff is capable of performing light duty jobs.

### IV. Discussion

#### A. ALJ's Hypothetical Question

Plaintiff first argues that the hypothetical question the ALJ posed to the VE did not accurately represent all of her limitations. Specifically, Plaintiff contends that the ALJ was inaccurate when she failed to take into account limitations with respect to social functioning. Defendant counters that the ALJ's hypothetical questions included all of the Plaintiff's limitations that were supported by the record.

The Third Circuit has held, with respect to hypothetical questions posed to vocational experts, that "[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). A hypothetical question posed to a VE "must reflect all of a claimant's

impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Rutherford, 399 F.3d at 554 (stating same). In Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002), the Third Circuit stated that "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." (citations omitted). The Third Circuit has clarified, however, that it "does not require an ALJ to submit to the [VE] every impairment <u>alleged</u> by a claimant. . . . [S]uch references to <u>all</u> impairments encompass only those that are medically established. And that in turn means that the ALJ must accurately convey to the [VE] all of a claimant's <u>credibly established limitations</u>." Rutherford, 399 F.3d at 554 (internal quotations and footnotes omitted) (emphasis in original).

In the present case, the ALJ asked the VE the following:

> I want you to assume an individual of claimant's age, education, and work experience, having the following residual capacity: being able to lift up to 20 pounds; sit for six hours; stand and walk for two hours with an at-will sit/stand option; occasional postural activities; no pushing or pulling with the lower extremities; no overhead reaching; being limited to simple, repetitive tasks with a 1, 2 reasoning; with only occasional changes in the work setting. Could that individual return to [Plaintiff]'s past relevant work?

(R. 52.) The VE was present throughout the entire hearing and heard all testimony from the Plaintiff regarding his impairments. The VE testified that such an individual could not perform the past relevant work of the Plaintiff, but could perform the jobs of assembler of plastic hospital products, office helper, and assembler of electrical equipment. (R. 52-53.)

The record reflects that the ALJ's hypothetical question included all of the Plaintiff's limitations that were supported by the record. Plaintiff reported that he had fair-to-good relationships with his mother, siblings, children, and nephew (R. 39, 47, 60, 227, 230, 246, 312,

328, 330); that he lived with a female friend (R. 16, 39, 247, 299); that his female friend and his nephew helped him with his needs such as grocery shopping, cooking, and driving (R. 38-41); that he had no problems getting along with family, friends, neighbors, authority figures, or following written or spoken instructions (R. 18, 153-54); and that he was never fired or laid off from a job due to problems getting along with other people (R. 154). Further, the medical evidence of record showed that while Plaintiff was being treated at The Wedge for major depressive disorder, he was non-compliant with his medication and frequently missed scheduled therapy sessions (R. 152, 218-45, 311-418); nevertheless, his diagnosis did not change, and his Global Assessment of Functioning[1] ("GAF") scores ranged from 55 to 63 (R. 238, 239, 241, 244, 311, 324, 359, 373, 387) – scores that were consistent with mild-to-moderate symptoms or limitations; he was "friendly and engaged," and related well to his doctors (R. 230, 246, 311-418); doctors described him as pleasant, neatly dressed, well-groomed, alert, oriented, and cooperative (R. 172, 230, 246, 311-418). While the ALJ did consider the opinion of Dr. Leonardo Arevalo, a psychiatrist at The Wedge, who determined that Plaintiff had marked limitations in all areas of social functioning (R. 20, 274-76), the ALJ declined to adopt this

---

[1] GAF scores are used by mental clinicians and doctors to rate the social, occupational, and psychological functioning of adults. Irizarry v. Barnhart, 233 Fed. Appx. 189, 190 n. 1 (3d Cir.2007). The GAF scale, designed by the American Psychiatric Association, ranges from 1 to 100, with a score of 1 being the lowest and 100 being the highest. See Debaise v. Astrue, 2010 WL 597488, at *5 n. 7 (W.D. Pa. Feb.16, 2010); Watson v. Astrue, 2009 WL 678717, at *5 (E.D. Pa. Mar.13, 2009). An individual with a GAF score of 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning;" of 50 may have "[s]erious symptoms (e.g., suicidal ideation ....)" or "impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job);" of 40 may have "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking or mood;["] of 30 may have behavior "considerably influenced by delusions or hallucinations" or "serious impairment in communication or judgment (e.g., ... suicidal preoccupation)" or "inability to function in almost all areas ...;["] of 20 "[s]ome danger of hurting self or others ... or occasionally fails to maintain minimal personal hygiene ... or gross impairment in communication." Debaise, 2010 WL 597488, at *5 n. 7 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th ed.2000)).

opinion because it was inconsistent with Plaintiff's own statements and the medical evidence, and was thus not entitled to controlling weight.

In light of this evidence, taken together, the ALJ was justified in not asking the VE about Plaintiff's social functioning limitations. The Court finds that the ALJ was justified in determining that the record indicated that Plaintiff's social functioning limitations were not credible, and thus, it was appropriate for the hypothetical question posed to the VE to not address any such social limitations that the ALJ did not find were credibly established by the record. Accordingly, the ALJ was entitled to rely upon the VE's responses as substantial evidence in support of the ALJ's determination that Plaintiff is not disabled. See Rutherford, 399 F.3d at 554.

B.     **Evaluation of Dr. Herman's Examination**[2]

Plaintiff argues that the ALJ committed a reversible error by failing to discuss or evaluate a consultative mental health examination performed by Dr. Carl Herman. Defendant responds by arguing that Dr. Herman's opinion was not entitled to significant weight because: (1) the ALJ accepted many of the limitations found by Dr. Herman, (2) Dr. Herman's opinion regarding the more extensive limitations was not entitled to controlling weight under the regulations, and was unsupported by and inconsistent with the other evidence of record, (3) although the ALJ did not explicitly discuss Dr. Herman's opinion in her decision, she implicitly considered it when she relied upon the assessment of the state agency physician, Dr. Galdieri, and (4) this case should not be remanded solely for the ALJ to rewrite the decision to discuss Dr. Herman's opinion

---

[2]The ALJ's opinion did not name many of the doctors and witnesses upon whose reports she relied. This is unusual, and the Court suggests that future opinions specifically name physicians and other care-givers.

because the ALJ implicitly considered it, and because Dr. Herman's restrictive limitations were inconsistent with and were unsupported by the other evidence.

The background regarding Dr. Herman's consultative mental health examination of Plaintiff is as follows: on November 21, 2007, at the request of the state agency, Dr. Herman examined Plaintiff, at which time Plaintiff told Dr. Herman that he was experiencing depression due to his inability to work and multiple deaths in the family. (R. 246-50). Plaintiff related becoming socially avoidant and frustrated, feeling "worthless and helpless," and having suicidal thoughts. (R. 246-50.) Dr. Herman's diagnosis included major depressive disorder, single episode with psychotic features, and history of alcohol dependence, in partial remission. (R. 246-50). Dr. Herman completed a "Medical Source Statement of Ability to Do Work-Related Activities" (R. 248-49), in which he rated Plaintiff as having an "extreme" limitation regarding the ability to respond appropriately to work pressures in a usual work setting (R. 248-49), and a "marked" limitation with regard to the abilities to understand, remember, and carry out detailed instructions, and to respond appropriately to changes in a routine work setting (R. 248-49).

As Plaintiff correctly argues, the ALJ's written opinion did not at any time refer to Dr. Herman's report and assessment. Without getting into the nuances of Defendant's proffered justifications for the ALJ's failure to discuss Dr. Herman's opinion, the Court finds that this failure necessitates remand, and that Defendant's arguments to the contrary are without merit.

The ALJ's role is to "review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability. In doing so, the ALJ must weigh the relative worth of a treating physician's report against the reports submitted by other physicians who have examined the claimant." Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994).

As the Third Circuit has made explicitly clear, an ALJ "must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. The [ALJ] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." Id. (intenral citations omitted) (emphasis added). The Third Circuit "has repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence." Dobrowolsky v. Califano, 606 F.2d 403, 406-07 (3d Cir. 1979) (citation omitted) (emphasis added). Further stated, unless the ALJ has "analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Id. at 407 (quoting Gober v. Mathews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Secretary of HEW, 567 F.2d 258, 259 (4th Cir. 1977))). For these reasons, the Third Circuit has made clear that a reviewing court may remand a case for good cause "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." Id. (quotation and citation omitted).

In the present case, the ALJ was certainly entitled to reject Dr. Herman's medical findings – but, concomitantly, she would be required to provide an explanation for the rejection of any such evidence. However, Defendant concedes Dr. Herman's report was not even considered. A medical report indicating that Plaintiff would have had difficulties working as a result of his condition is clearly probative here, and the ALJ's failure to examine it in her written opinion

requires remand under settled Third Circuit law.

While the Court is duty-bound to apply the law and remand the case for the ALJ to explicitly discuss Dr. Herman's report, the Court wishes to state that the ALJ's written opinion is thorough, extensive, and well-reasoned, and that the ALJ should be commended for her attention to detail and diligence in preparing her opinion. On remand, the ALJ shall make clear her consideration of Dr. Herman's report, and if it is to be discounted, the reasons why.

### C. ALJ's RFC Assessment

At step five of the sequential analysis, the ALJ found that Plaintiff has the RFC to perform a narrowed range of light work that included standing and walking no more than two hours per day. (R. 17.) According to the Regulations, light work involves lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b). A job is in this category when it requires a good deal of walking or standing, or, when it involves sitting most of the time with some pushing or pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). The ALJ narrowed Plaintiff's ability to do the full range of light work, finding that Plaintiff can perform light work which requires lifting and carrying no more than twenty pounds, sitting no more than six hours a day, and standing and walking no more than two hours per day, and that Plaintiff cannot push or pull with his lower extremities, do any overhead reaching with his right upper extremity, and must have the option of sitting or standing to do work. (R. 21.) The ALJ also noted that because Plaintiff could do light work, he was also able to do sedentary work, provided there were no additional limiting factors. (R. 21.)

Because Plaintiff's limitations impede his ability to perform the full range of light work,

the ALJ elicited VE testimony to determine the extent to which Plaintiff's limitations eroded the unskilled, light occupational base. (R. 51-53.) The ALJ asked the VE whether jobs existed in the regional or national economy for an individual of Plaintiff's age, education, work experience, and RFC. (R. 52.) The ALJ specifically asked the VE to give three examples, and the VE testified that there were a substantial number of jobs in the regional and national economy that a person such as Plaintiff could perform, including the unskilled, light occupations of assembler of plastic hospital products, office helper, and assembler of electronic equipment. (R. 52-53.)

Plaintiff argues that the ALJ's RFC assessment represents little more than the ability to perform sedentary work, thus undermining the VE's testimony that Plaintiff is capable of performing light duty jobs. Further, Plaintiff argues that the ALJ's failure to ask the VE about an alleged conflict between his testimony and information contained in the "Dictionary of Occupational Titles" ("DOT") requires remand. Defendant counters that Plaintiff can still perform those light jobs that require sitting most of the time with some pushing and pulling of the arms, and that remand on this ground is not required.

The Court finds that Plaintiff's arguments lack merit. Defendant is correct in arguing that Plaintiff's "attacks" upon the VE's testimony essentially constitute lay beliefs about the vocational requirements of the positions at issue. The VE, based upon his experience in the field and his knowledge of the DOT, identified three examples of jobs that a person with Plaintiff's background and vocational profile could perform given his RFC assessment. (R. 52-53.) Thus, where the VE's testimony was that Plaintiff can still perform those light jobs that require sitting most of the time with some pushing and pulling of the arms, the ALJ was justified in finding that substantial evidence supported her conclusion that Plaintiff was not disabled.

The Court further finds that Plaintiff is incorrect in arguing that a conflict between the DOT and the VE's testimony requires remand. The one potential inconsistency was that the VE's three examples of jobs would have required the frequent lifting of ten pounds, which Plaintiff argues would require Plaintiff to be on his feet for close to six hours per day. The DOT job descriptions to not contain such information, and instead, are consistent with the jobs identified by the VE. See DOT No. 239.567-010 Office Helper; DOT No. 712.687-010 Electronic Equipment Assembler; DOT No. 729.687-010 Plastic Hospital Products Assembler. Plaintiff has identified no credible evidence to counter the VE's testimony, and Plaintiff's mere lay opinion is insufficient to render the VE's testimony unreliable.

Additionally, the ALJ's failure to ask the VE about this alleged conflict does not require remand. As the Third Circuit has made clear, "this Court has not adopt[ed] a general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal." Jones v. Barnhart, 364 F.3d 501, 506 n.6 (3d Cir. 2004) (internal quotation marks and citation omitted). Indeed, the VE testified that the three jobs he listed were examples, instead of an exhaustive list, of the work Plaintiff could do given his limitations. Further, the jobs identified are "consistent with the limitations that the ALJ posed to the expert in his hypothetical [question]." Rutherford, 399 F.3d at 558 (3d Cir. 2005). As for Plaintiff's unsupported alleged inconsistency, it "is simply not egregious enough . . . to bring into question the ALJ's reliance on the expert testimony as a whole." Id. As the Third Circuit held in Rutherford, "although some minor inconsistencies may exist between the vocational testimony and DOT information, we conclude that the testimony provided substantial evidence for the ALJ's conclusions." Id. Here, similarly, the Court finds that the testimony provided substantial evidence for the ALJ's

conclusions.

## V.	Conclusion

For the foregoing reasons, the Court concludes that while most of the ALJ's decision is supported by substantial evidence, the ALJ shall, upon remand, explicitly address Dr. Herman's report. Accordingly, Plaintiff's Motion for Summary Judgment is granted in part.

An appropriate Order follows.

A:\Young v. Astrue, 09-2834 - Memo SS Appeal.wpd